AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### District of Utah

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>A PURPLE SAMSUNG S22 CELLULAR PHONE<br>POSSESSED/USED ROY IVAN MIRANDA SANCHEZ | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No.  4:26-mj-00034 PK |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See ATTACHMENT A

located in the _____ District of _____Utah_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251 | Production of Child Pornography |
| 18 U.S.C. § 2252A(a)(5) | Possession of Child Pornography |

The application is based on these facts:

See AFFIDAVIT of FBI Special Agent Chafin Cox

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Chafin Cox
_____
*Applicant's signature*

Chafin Cox, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ *(specify reliable electronic means)*.

Date:  June 4, 2026
_____
*Judge's signature*

City and state:  St. George, Utah

PAUL KOHLER, U.S. Magistrate Judge
_____
*Printed name and title*

MELISSA HOLYOAK, United States Attorney (#9832)
BRADY WILSON, Assistant United States Attorney (#17350)
Attorneys for the United States of America
20 North Main Street, Suite 208
St. George, Utah  84770
Telephone: (435) 634-4266
brady.wilson@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF A PURPLE SAMSUNG S22 CELLULAR PHONE POSSESSED/USED ROY IVAN MIRANDA SANCHEZ | AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT<br><br><br>Case No.   4:26-mj-00034 PK |

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT**

I, CHAFIN COX, Special Agent with the Federal Bureau of Investigation, United States Department of Justice, being duly sworn, state as follows:

## I.    AFFIANT BACKGROUND AND QUALIFICATIONS

1.  I am a Federal Bureau of Investigation (FBI) Special Agent currently assigned to the Salt Lake Division, St. George Resident Agency and work closely with the Washington County Drug Task Force (WCDTF).  I have been employed as a Special Agent of the FBI

1

since July 2018. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7).

2.  By virtue of my training and experience, and my interactions with other experienced agents who conduct drug investigations, I am familiar with the methods used by drug traffickers to: (1) import, transport, store, safeguard, and distribute drugs; (2) collect, transport, store, safeguard, remit, and/or launder drug proceeds; (3) obtain and utilize telephones, computers, and other devices in order to communicate with each other, as well as the jargon and/or codes commonly used when they refer to drugs and/or drug proceeds. I have become familiar with the day-to-day operations and the various tools, methods, trends, paraphernalia, and related articles utilized by various traffickers in their efforts to manufacture, possess, import, conceal, package, use, and distribute illegal drugs.

## II.   PURPOSE OF AFFIDAVIT

3.  I submit this Affidavit in support of a *second* application for a search warrant for review of the purple Samsung S22 cell phone used/possessed by Roy Ivan Miranda Sanchez, being currently secured in the evidence room at St George Police Department's located in St. George, Utah (**the Subject Device**)—described in greater detail in Attachment A.

4.  On April 22, 2026, under 4:26-mj-00024-PK, I received authorization to search **the Subject Device** for "evidence of the commission of, the fruits of, or property which has been used as the means of committing the offenses of possession with intent to distribute,

and distribution of, controlled substances and conspiracy to do so, in violation of 21 U.S.C. 841(a)(1) and 846." **The Subject Device** was submitted to a digital forensics crime lab on April 29th, 2026, in order to review its digital contents pursuant to that warrant. On approximately May 18, 2026, I received the digital contents of and searched **the Subject Device** / forensic download of **the Subject Device** pursuant to that authorization and observed at least one image of or containing what I believe to be child pornography as defined by federal law.

5. As a result, I stopped my search of **the Subject Device** and am now seeking authorization to search **the Subject Device** for evidence of the commission of, the fruits of, or property which has been used as the means of committing the following offenses: violations of 18 U.S.C. § 2251 (Production of child pornography); 18 U.S.C. § 2252A(a)(2) (Receipt of child pornography); and 18 U.S.C. § 2252A(a)(5) (Possession of child pornography). Based on my training and experience, and as described in greater detail herein, there is probable cause to believe that ROY IVAN MIRANDA SANCHEZ has committed the above offenses and that evidence, instrumentalities, contraband, and/or fruits of those offenses, as further described in Attachment B, will be located in **the Subject Device**, as described in Attachment A.

6. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The

3

facts in this affidavit are included based on my training and experience, as well as my review of reports written by other law enforcement officers.

### III.   SEARCH METHODOLOGY TO BE EMPLOYED

7.  The search procedure of electronic data contained in a cell phone may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

a.  examination of all of the data contained in cell phone hardware, software, and/or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth herein;

b.  searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

c.  surveying various file directories and the individual files they contain;

d.  opening files in order to determine their contents;

e.  using hash values to narrow the scope of what may be found. Hash values are used to find previously identified files of images of child pornography and do not capture images that are the result of new production, images embedded in an alternative

4

file format, or images altered, for instance, by a single pixel. Thus, hash value results are under-inclusive, but are still a helpful tool;

    f.   scanning storage areas;

    g.  performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment B; and/or

    h.  performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment B.

## IV.  **BACKGROUND REGARDING DIGITAL DEVICES AND CHILD PORNOGRAPHY**

8. Based upon my training, my experience, and my discussions with other law enforcement agents, I know the following:

    a.  Users of digital devices increasingly choose to store items in digital form (e.g. pictures, videos, electronic documents) because digital data takes up less physical space, and can be easily organized and searched. Users also choose to store data in their digital devices, such as cell phones, because it is more convenient for them to access data in devices they own, rather than to later spend time searching for it. Keeping things in digital form can be safer because data can be easily copied and stored off site as a failsafe.

    b.  Digital devices can also store data automatically, without a user's input. Even if a sophisticated user understands this automatic storage of data, attempts at deleting this

5

data often fail because the data may be automatically stored multiple times and in different locations. Thus, digital evidence may exist despite attempts at deleting it.

c. Digital data is particularly resilient to deletion. First, data is often automatically stored multiple times in multiple places, where even sophisticated users may not be able to locate. Second, digital data can be recovered years after it has been saved, or viewed even after such data has been deleted.

d. Cell phones (essentially functioning as computers) basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

e. The size, portability, and quality of modern cell phones make them an ideal platform for child pornographers to produce child pornography because, essentially, everything they need to do so is readily available in the palm of their hand.

f. Given that cell phones can easily and quickly connect to the internet, child pornographers can, by virtue of their use of an internet-connected cell phone, distribute, and communicate about child pornography with literally millions of other internet-connected users around the world and, do so almost instantaneously.

g. A cell phone's ability to store images in digital form makes it an ideal repository for child pornography. The storage capacity of modern cell phones has grown significantly such that the average cell phone can store thousands of images at very high

resolution. What's more, cell phones can easily facilitate the storage of images online or in the "cloud."

h. The internet, and its ubiquitous reach, affords collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion—facilitated commonly by cell phone.

i. Many people involved in the sexual exploitation of children use mobile applications (apps) to facilitate the sexual exploitation of children. There are hundreds of thousands of apps available for download to any user with access to the internet. Popular apps, including Gmail, Instagram, Facebook, Facebook Messenger, WhatsApp, Snapchat and others, are commonly downloaded to a mobile device and have a social media function which allows a user to create their own profile and communicate with other users. Depending on the application, the communication can occur as text messaging, voice messaging, and/or live stream video messaging. Apps also often allow for the sharing of files between users. These files can be images or videos and are often sent as attachments to a message. These files can then be stored online (for example in the message history or thread on an Internet Service Provider's servers) or downloaded to the individual's device(s).

j. As is the case with most digital technology, communications by way of digital devices can be saved or stored on the device itself. Storing this information can be intentional, *i.e.*, by saving an e-mail as a file or saving the location of one's favorite

websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, *e.g.*, traces of the path of an electronic communication may be automatically stored in many places (*e.g.*, temporary files or ISP client software, among others). In addition to electronic communications, a user's internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Additionally, a forensic examiner often can recover evidence suggesting whether a digital device contains peer to peer software (common with individuals sharing child pornography), when the device was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

## V.    PROBABLE CAUSE

9.    As described in my "Affidavit in Support of Application for a Search Warrant" under 4:26-mj-00024-PK, I have been involved in the investigation of a drug trafficking organization ("DTO") operating in St. George, Utah. Investigators have been able to identify that DTO member Roy Ivan Miranda Sanchez (Sanchez) has been involved in the trafficking of narcotics into the Washington County-area for further distribution therein.

10. On March 4, 2026, SGPD Officers conducted the traffic stop of a blue Nissan Sentra which, early that day, I had visually observed, via electronic surveillance, arrive at a known drug "stash house" in Mesquite, NV. After I observed Sanchez enter the residence and then leave a short time later, I made arrangements to have the vehicle stopped in Utah.

8

During the traffic stop, the officers identified the three occupants of the vehicle as Roy Ivan Miranda Sanchez (Driver), Nichole Lees (Front Passenger), and Jose Luis Hernandez Guevara (Rear Passenger). During the traffic stop, officers located and seized a total of approximately 171 grams of methamphetamine, a small amount of cocaine, and a small amount of marijuana. During the traffic stop, officers located two cell phones belonging to Sanchez and seized them as evidence, including **the Subject Device**.

11. On April 22, 2026, under 4:26-mj-00024-PK, I received authorization to search **the Subject Device** for "[e]vidence of the commission of, the fruits of, or property which has been used as the means of committing the offenses of possession with intent to distribute, and distribution of, controlled substances and conspiracy to do so, in violation of 21 U.S.C. 841(a)(1) and 846." On April 29th, 2026, **the Subject Device** was submitted to a digital forensics crime lab in order to have the digital contents extracted for review. On May 18th, 2026, I searched **the Subject Device** / forensic download of **the Subject Device** pursuant to that authorization. While reviewing **the Subject Device** / forensic download of **the Subject Device** for evidence within the scope of that prior authorization I observed at least one image that I believe to be or contain child pornography as defined by federal law. Although I only viewed the file briefly, and have not reviewed it again, below is a description of the file, as best I can recollect:

9

- The image appears to depict an adult male's hand lifting the dress of a pre-pubescent female child (approximate age of 5-7 years old). The female child does not have any underwear on and her vagina is clearly seen. It appears that this photo was taken by an adult male who is lifting the dress with one hand while taking the picture with the other hand.

It is apparent to any reasonable viewer of this image that the intent of the person that took the image, was to capture an image of the pre-pubescent female child's vagina.

12. Given that the image contains suspected child pornography and was not within the scope of the prior authorization, I stopped my review of **the Subject Device** and am now seeking new authorization as described herein.

///

///

///

///

///

///

10

## VI.    <u>CONCLUSION</u>

13. Based on the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that **the Subject Device** contains evidence of violations of 18 U.S.C. § 2251 (Production of child pornography); 18 U.S.C. § 2252A(a)(2) (Receipt of child pornography); and 18 U.S.C. § 2252A(a)(5) (Possession of child pornography); and that the information sought herein will materially aid the investigation.

RESPECTFULLY SUBMITTED, this 4th day of June, 2026.

*/s/ Chafin Cox*_____
CHAFIN COX, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this ___4th___ day of  June, 2026.

_____
JUDGE PAUL KOHLER
United States Magistrate Judge

11

## **ATTACHMENT A (PAGE 1 OF 1)**

## PROPERTY TO BE SEARCHED

The Subject Device is described as a purple Samsung S22 cell phone used/possessed by Roy Ivan Miranda Sanchez (**Subject Device 1**). **Subject Device 1** is currently in evidence at the St George Police Department.

## ATTACHMENT B (PAGE 1 OF 2)

### ITEMS TO BE SEIZED

Evidence of the commission of, the fruits of, or property which has been used as the means of committing violations of 18 U.S.C. § 2251 (Production of child pornography); 18 U.S.C. § 2252A(a)(2) (Receipt of child pornography); and 18 U.S.C. § 2252A(a)(5) (Possession of child pornography). These records and materials are more specifically identified as:

1. Any and all material depicting child pornography, any sexual conduct regardless of whether it is between adult(s) and children, or between children, child erotica; any images, visual recording, digital imagery, sketches, drawings, or other media depicting or portraying lewd or lascivious exhibition of children's genitalia; sexually suggestive poses involving children; or any type of sexually explicit conduct involving children, as defined in Title 18, United States Code, Section 2256(8);

2. Any and all audio recordings involving children engaging in sexual acts, whether alone, with another child or children, or with an adult or adults;

3. Any and all records and materials, in any format and media (including, but not limited to, envelopes, letters, papers, e-mail, chat logs and electronic messages), pertaining to the Target Offenses or depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256;

13

4.      Any and all records and materials, in any format and media (including, but not limited to, e-mail, chat logs and electronic messages) identifying persons engaged in the Target Offenses;

5.      Records of communication (as might be found, for example, in digital data files) between individuals concerning the topic of child pornography, the existence of sites on the Internet that contain child pornography or who cater to those with an interest in child pornography, as well as evidence of membership, subscription or free membership, in online clubs, groups, services, or other Internet sites that provide or make accessible child pornography to its members and constituents;

6.      Evidence of any online storage, e-mail or other remote computer storage subscription to include unique software of such subscription, user logs or archived data that show connection to such service, and user login and passwords for such service;

7.      Any and all buddy lists, correspondence, or text messages in whatever media and format pertaining to Group E-Mails which relate to child exploitation or child pornography;

8.      Images and videos of children in non-sexually explicit poses or scenes, located in electronic, digital, or printed formats, which are necessary for comparison purposes of any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256;

14

9. Any and all computer software, including programs to run operating systems, applications (like word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs;

10. Any computer-related documentation, which consists of written, recorded, printed or electronically stored material that explains or illustrates how to configure or use computer hardware, software or other related items;

11. Records and information evidencing occupancy or ownership of the Subject Device described above, including, but not limited to, sales receipts, registration records, records of payment for Internet access, usernames, passwords, device names, and records of payment for access to newsgroups or other online subscription services;

12. Stored electronic data and related digital storage relating to Global Positioning System ("GPS") data;

13. Records evidencing the use of the Subject Device's capability to access the Internet, including: records of Internet Protocol addresses used and records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

14. Images and videos, to include any metadata identifying the date and location of the Subject Device at the time of the photo or video pertaining to the Target Offenses;

15

1.      Evidence of who used, owned, or controlled the Subject Device at the time the things described in this warrant were possessed, accessed, received, created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

2.      Evidence of software that would allow others to control the Subject Device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software; and evidence of the lack of such malicious software;

3.      Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Subject Device;

4.      Evidence of the times the Subject Device was used;

5.      Passwords, encryption keys, and other access devices that may be necessary to access the Subject Device.